UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SMALL CONSTRUCTION GROUP, LLC | * | CIVIL ACTION NO. 23-6866 |
| | * | |
| VERSUS | * | SECTION: "G"(1) |
| | * | |
| BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY | * | JUDGE NANNETTE JOLIVETTE BROWN |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is Masonry Products Sales, Inc.'s Motion for Leave to File Complaint of Intervention. (Rec. Doc. 10). Masonry Products sold bricks to the plaintiff in this action for use in the project for which plaintiff seeks payment from the payment bond issuer. Masonry Products has no right to payment directly from the owner or the bond issuer nor any interest in the proceeds of this lawsuit, and the Court therefore finds it has no right to intervene. Nor has Masonry Products shown that permissive intervention is appropriate here. The Motion for Leave to File Complaint of Intervention is DENIED.

Background

This is a lawsuit seeking payment for construction services. In August 2019, Lemoine Company, LLC, entered into a public works contract as general contractor to construct the New Cohen High School (the "Project"). Berkshire Hathaway Specialty Insurance Company issued the payment and performance bond on behalf of Lemoine for the Project under state law. In April 2021, Small Construction Group, LLC, entered into a Master Subcontract Agreement and Project Work Order with Lemoine for masonry work on the Project for a price of $1,079,997. Small used Lemoine's drawings to determine the quantity and color of bricks to order. After the bricks were ordered and delivered, Lemoine provided Small with a color-coded copy of the drawings. Although

1

the color label on each section of brick was the same as the original drawing, the color-shading did not match the labels. This resulted in a discrepancy of 78,570 bricks of the wrong color.

Lemoine and Small devised a plan for procuring new bricks to match the shading on the color-coded drawings. Small would have to order new bricks from a different supplier and stain them because the original supplier had gone out of business. Small alleges that Lemoine approved the new mockups and samples in June 2022. Small alleges that it completed the entire scope of work, including the extra work, by December 2022. It alleges that Lemoine accepted its masonry work, yet has not paid Small's change order. $248,741.28 remains due.

On November 15, 2023, Small filed this lawsuit against Berkshire for amounts owed on bond pursuant to the Louisiana Public Works Act. A scheduling order has not yet been issued.

Presently, Masonry Products seeks to intervene. Small purchased the new bricks and related goods and materials from Masonry Products on open account in September 2022. Small has not paid for the bricks and materials, and Masonry Products alleges that Small owes $70,657.63 in outstanding invoices and finance charges plus $28,263.05 in contractual attorney's fees, judicial interest, and court costs.[1] Masonry Products alleges on information and belief that some of the funds that Small seeks to recover from Berkshire in this lawsuit are owed to Masonry Products for the bricks and other materials Small purchased. Masonry Products insists it has an interest relating to the transaction at issue in this lawsuit. And it argues that Small cannot protect its interest because there are no safeguards to ensure Small will use any recovery in this suit to fulfil its obligation to pay Masonry Products.

---

[1] Masonry Products alleges that Small is subject to a Binding Credit Agreement entered into in 2015, obligating it to make payment within 30 days and to pay a service fee of 1.5% per month and collection costs and/or attorney's fees of up to 40% if the account is placed into collection.

Small opposes. It argues that Masonry Products does not have a direct, substantial, and legally protected interest in this action because it failed to protect its rights against Lemoine or Berkshire under the Louisiana Public Works Act by failing to meet the Act's notice requirements. Moreover, it argues that any interest of Masonry Products will not be impaired because it has filed suit against Terrance Small—the owner of Small who personally guaranteed any debt owed by Small to Masonry Products—in state court.

In reply, Masonry Products insists it has an interest in this action, even if it does not have an independently enforceable legal right against Berkshire. It adds that Small's argument that Masonry Products should not be allowed to benefit from Small's diligence in recording its Louisiana Public Works Act privilege suggests that Small will keep the proceeds of any recovery from Berkshire without paying Masonry Products. It argues that, as a result, its interest would indeed be impaired if it was not allowed to intervene. It explains further that the state court lawsuit is only against Torrance Small on the guarantee, not Small itself, and argues that the state court suit does not adequately protect its interests against Small.

Law and Analysis

1. *Standard for Granting Leave to Intervene*

"[A] motion to intervene as of right is governed by Federal Rule of Civil Procedure 24(a)(2)." Ross v. Marshall, 426 F.3d 745, 753 (5th Cir. 2005). Such a motion should be granted where:

> (1) the motion to intervene is timely; (2) the potential intervener (sic) asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition of that case may impair or impede the potential intervener's ability to protect her interest; and (4) the existing parties do not adequately represent the potential intervener's interest.

Id. (quoting Saldano v. Roach, 363 F.3d 545, 551 (5th Cir. 2004)). "Although failure to satisfy any one element precludes the applicant's right to intervene," the Fifth Circuit has explained that "[i]ntervention should generally be allowed where 'no one would be hurt and greater justice could be attained.'" Id. (quoting Sierra Club v. Espy, 18 F.3d 1202, 1205 (5th Cir. 1994). Timeliness of the intervention is not at issue here.

To satisfy the requirement that the potential intervenor has an interest related to the property or transaction that forms the basis of the controversy, the potential intervenor must demonstrate an interest that is "direct, substantial, [and] legally protectable." Saldano, 363 F.3d at 551 (quoting John Doe No. 1 v. Glickman, 256 F.3d 371, 379 (5th Cir. 2001)) (alteration in original). "[T]he inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." Texas, 805 F.3d at 657.

To establish that the potential intervenor's interest is inadequately represented, the potential intervenor must show only that the representation "may be" inadequate. Trbovich v. United Miner Workers of Am., 404 U.S. 528, 538 n.10 (1972). The Fifth Circuit acknowledges the burden is "minimal," but has imposed two presumptions to give it some teeth. Brumfield v. Dodd, 749 F.3d 339, 345 (5th Cir. 2014). The first presumption concerns a governmental body charged with representing the interests of the absentee and is not applicable here. See Edwards v. City of Houston, 78 F.3d 983, 1005 (5th Cir. 1996). "The second presumption of adequate representation arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit." Id. To overcome this presumption, the potential intervenor "must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." Id.

Even where someone is not entitled to intervene as of right, the court may nonetheless permit anyone to intervene who "has a claim or defense that shares with the main action a common

4

question of law or fact." Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Id. R. 24(b)(3). Courts should also consider "whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues." League of United Latin Am. Citizens, Council No. 4434 v. Clements, 884 F.2d 185, 189 (5th Cir. 1989). "Permissive intervention 'is wholly discretionary with the [district] court . . . .'" New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 470–71 (5th Cir. 1984) (quoting Wright & Miller, 7C Federal Practice and Procedure: Civil § 1913) (alteration in original).

The parties have not directed the Court, and the Court has not found, any cases where a subcontractor was permitted to intervene in an action by a general contractor against an owner or bond issuer. To the contrary, it appears such interventions have not been allowed. For example, in Golden Nugget Lake Charles, LLC v. W.G. Yates & Sons Construction Co., the Western District of Louisiana denied a subcontractor leave to intervene. No. 15-cv-2751, 2016 WL 8200623 (W.D. La. May 16, 2016). The suit had been initiated by the owner against the general contractor, and the general contractor counterclaimed for payment against the owner. Id. at *1. The subcontractor sought to intervene as a defendant to assert a counterclaim against the owner for payment and a crossclaim against the general contractor for payment. Id. The general contractor did not contest that the subcontractor had an interest in the action (although the subcontractor did not have a contractual relationship with the owner). Id. at *2. But the Court found that the subcontractor's interest would not be impaired because the subcontractor remained able to pursue its own claim against the general contractor and/or its sureties. Id. The court also found that the general contractor would adequately represent the subcontractor's interest in payment, observing that the

5

subcontractor's assertion that the general contractor might pursue some contractors' claims more than others was "purely speculative." Id. The court thus found that the subcontractor was not entitled to intervene as of right. Id.

When a third party claiming an interest in the proceeds of a primary lawsuit is allowed to intervene, that third party typically has some legal or contractual interest in the proceeds of the lawsuit. For example, an insurer who made payments to an employee on behalf of the employer pursuant to the Longshore Harbor Workers Compensation Act can intervene in the employee's lawsuit against the tortfeasor to protect its subrogation lien. Chenevert v. Travelers Indem. Co., 746 F.3d 581, 588 (5th Cir. 2014); Campos v. Crescent Towing & Salvage Co., No. CIV.A. 01-1339, 2002 WL 31556349, at *1 (E.D. La. Nov. 15, 2002). And a personal injury plaintiff's former attorney may be allowed to intervene to protect its interest—as outlined in the contingency fee agreement—in amounts collected by settlement or judgment. Gaines v. Dixie Carriers, Inc., 434 F.2d 52, 54 (5th Cir. 1970).

In contrast here, Masonry Products has no legally cognizable interest in the proceeds of this lawsuit: Small has no obligation to use the proceeds of this lawsuit to pay Masonry Products, even if it appears undisputed that Small owes Masonry Products for the bricks and materials (and may also owe finance charges, attorneys' fees, and interest). Nor does Masonry Products have any contractual or legal right against Berkshire or Lemoine.[2] Because it has no direct, substantial, and legally protected interest in the present action, it is not entitled to intervene as of right.[3]

---

[2] As Small points out and Masonry Products does not dispute, Masonry Products did not undertake the necessary steps to obtain a right of action against Lemoine and/or Berkshire under the Louisiana Public Works Act. See La Rev. Stat. § 38:2247.

[3] Masonry Products insists that it should be allowed to intervene because Small has indicated that it will not use the proceeds of this lawsuit to pay Masonry Products. But the Court cannot even address whether Masonry Products' interest is adequately represented because Masonry Products has no direct, substantial, and legally protected interest in this lawsuit. As to its interest in receiving payment from Small, Masonry Products remains able to pursue a separate legal action.

Nor is the Court convinced that permissive intervention is appropriate here. The parties do not address whether Masonry Products' claim shares a common question of law or fact with the main action or whether the joinder of its claim would delay the original action. But the Court finds that denying Masonry Products' motion will not impair or impede its interests. It remains able to pursue its claim against Small in a separate lawsuit, just as it is pursuing the guarantor Torrance Small in a state court action. Injecting the Masonry Products-Small dispute into the present lawsuit will raise new issues related to the contractual relationship between them. Further, Masonry Products' presence in this lawsuit is unlikely to contribute significantly to the development of the underlying factual issues. Whether bricks were provided and at what cost does not appear to be at issue here—instead, the parties dispute who is responsible for the error that led to the change order and whether the change order was legitimate. See Berkshire's Mo. to Dismiss, Rec. Doc. 7. The Court finds no reason to allow permissive intervention here.

## Conclusion

Because Masonry Products has no right to payment directly from the owner or the bond issuer nor any interest in the proceeds of this lawsuit, it has no right to intervene. Further, Masonry Products has not shown that it is entitled to permissive intervention. Accordingly, the Motion for Leave to File Complaint of Intervention is DENIED.

New Orleans, Louisiana, this 6th day of May, 2024.

                                                                   Janis van Meerveld
                                                        United States Magistrate Judge