**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SMALL CONSTRUCTION GROUP, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-6866** |
| **BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY** | **SECTION: "G"(1)** |

## ORDER AND REASONS

Before the Court is Defendant Berkshire Hathaway Specialty Insurance Company's ("Defendant") Motion to Dismiss for Failure to State a Claim.[1] This case involves a public works contract with the State of Louisiana through the Department of Education to construct a high school in New Orleans.[2] Lemoine Company, LLC ("Lemoine") was general contractor for the project.[3] Defendant issued a statutory payment and performance bond for the project with Lemoine as principal and Defendant as surety.[4] Plaintiff brings this action pursuant to the Louisiana Public Works Act alleging that the construction project was compromised due to discrepancies in the construction drawings, and Plaintiff is entitled to costs for a change order.[5] Defendant argues that Plaintiff has failed to allege facts that entitle it to relief because: (1) Plaintiff has not shown that it is entitled to costs for the change order pursuant to the terms of the subcontract; and (2) Lemoine

---

[1] Rec. Doc. 7.

[2] Rec. Doc. 1.

[3] *Id.*

[4] *Id.*

[5] *Id.*

1

is statutorily immune pursuant to Louisiana Revised Statute § 9:2771.[6]

For the reasons stated herein, the Court finds that Plaintiff's allegations are insufficient to show that Plaintiff is entitled to relief pursuant to the Louisiana Public Works Act. Therefore, the Court grants Plaintiff leave to amend the Complaint to cure this deficiency, if possible. The issue of whether Lemoine is statutorily immune involves questions of fact that cannot be resolved on a Rule 12(b)(6) motion. Accordingly, considering the motion, the opposition, the reply memorandum, the record, and the applicable law, the Court denies the motion and grants Plaintiff leave of Court to amend the complaint to cure the noted deficiencies.

## I. Background

On August 21, 2019, Lemoine, as general contractor, entered into a public works contract with the State of Louisiana through the Department of Education to construct the New Cohen High School located at 3520 Dryades Street, New Orleans, Louisiana 70115 ("the Project").[7] On September 19, 2019, a copy of the contract was recorded with the Recorder of Mortgage for Orleans Parish, State of Louisiana.[8] Defendant issued a statutory Payment and Performance Bond for the project with Lemoine as principal and Defendant as surety.[9]

On August 13, 2020, Plaintiff submitted a bid proposal to Lemoine to perform masonry work.[10] The Complaint alleges that Plaintiff bid the project in accordance with Lemoine's written bidding documents, which included a set of black and white construction drawings dated June 5,

---

[6] Rec. Doc. 7.

[7] Rec. Doc. 1 at 2.

[8] *Id.*

[9] *Id.*

[10] *Id.*

2020.[11] The Complaint states that Plaintiff relied on said construction drawings to calculate the number of red and tan bricks needed to complete the masonry work.[12]

On April 7, 2021, Lemoine entered into a Master Subcontract Agreement ("the Subcontract") with Plaintiff to perform the masonry work for the project.[13] The price for the subcontract was $1,079,997.00.[14] The subcontract required Plaintiff to complete the work in accordance with the construction drawings, which were identified by name and number in exhibit B of the subcontract.[15] Upon Lemoine's acceptance of the subcontract, Plaintiff was provided electronic access to updated construction drawings dated March 15, 2021.[16] The Complaint states that the March 15, 2021 construction drawings were substantively identical to the June 5, 2020 drawings and did not change the brick quantity and color calculation.[17] The Complaint states that neither of the construction drawings were color-coded.[18]

The Complaint states that after the execution of the subcontract, Plaintiff informed Lemoine that the time for delivery of the bricks to the construction site would be at least sixteen weeks.[19] At Lemoine's request, Plaintiff agreed to work expeditiously to ensure the bricks were

---

[11] *Id.*

[12] *Id.*

[13] *Id.* at 3.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

ordered so that work could commence by Thanksgiving.[20] On June 30, 2021, after conferring and obtaining approval from Lemoine, Plaintiff ordered the brick color and quantity for the project.[21] The Complaint states that Plaintiff determined the quantity and color based on the construction drawings provided by Lemoine and by means and methods consistent with the general standards of the industry.[22]

The bricks were delivered to the construction site in late October 2021.[23] The Complaint states that Lemoine was not prepared for Plaintiff to begin the project by Thanksgiving, and Plaintiff was forced to store the materials on the site for approximately one month.[24]

In January 2022, Plaintiff's on-site supervisor asked Lemoine if color-coded construction drawings existed for the project.[25] On January 14, 2022, Lemoine emailed Plaintiff a color-coded copy of the March 15, 2021 construction drawings from the project architect.[26] The Complaint alleges that the color-coded construction drawings included red and tan coloring on the bricks but otherwise appeared to be the same as the black and white version.[27]

The Complaint states that as the project progressed, Plaintiff noticed a significant discrepancy between the color-coded drawings and the black and white drawings.[28] The Complaint

---

[20] *Id.*

[21] *Id.*

[22] *Id.* at 4.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

alleges that the shading on the color-coded drawings did not match the labels for the brick colors and locations on the black and white drawings.[29] For example, the Complaint states that the A-201 West Elevation is labeled with "brick veneer (tan) only" on the black and white drawings, while the color-coded drawings show a pattern of tan and red bricks.[30] Based on this discrepancy, there was a brick surplus of one color and a shortage of another color, resulting in an overall miscalculation of 78,570 bricks.[31]

The Complaint states that Plaintiff promptly notified Lemoine of the discrepancy, and the parties worked together to devise a new plan for procuring the correct quantity and color of bricks.[32] On or about June 3, 2022, Lemoine and the project architect approved and expressly directed Plaintiff to order new bricks and perform the extra work on the project.[33]

Plaintiff completed the entire scope of the work by December 2022.[34] The Complaint states that despite multiple demands, Lemoine has failed to pay Plaintiff's change order, which represents the current amount due pursuant to the subcontract.[35] The Complaint states that the outstanding amount due is $248,741.28.[36]

On December 29, 2022, Plaintiff filed a Sworn Statement of Claim and Privilege with the Recorder of Mortgage for Orleans Parish for the unpaid balance pursuant to the Louisiana Public

---

[29] *Id.* at 5.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* at 6.

Works Act.[37] On the same date, the Complaint states that Plaintiff notified Defendant, Lemoine, and the State of Louisiana through the Department of Education – Recovery School District of its Sworn Statement of Claim and Privilege via certified mail.[38] To date, Plaintiff has not been paid in connection with its Sworn Statement of Claim and Privilege.[39]

On November 15, 2023, Plaintiff filed a Complaint against Defendant asserting a claim pursuant to the Louisiana Public Works Act.[40] On February 22, 2024, Defendant filed a Motion to Dismiss for Failure to State a Claim.[41] On April 23, 2024, Plaintiff filed an opposition to the motion.[42] On April 29, 2024, Defendant filed a reply memorandum in further support of the motion.[43]

## II. Parties' Arguments

### A.    *Defendant's Argument in Support of the Motion*

Defendant argues that Plaintiff cannot and has not pled sufficient facts in the Complaint to show that payment is due from Lemoine for the unpaid amount under the subcontract.[44] Defendant contends that Plaintiff has not pled facts that would render Lemoine, as general contractor, liable for the alleged discrepancies in the project's plans as required by Louisiana Revised Statute §

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] Rec. Doc. 7.

[42] Rec. Doc. 16.

[43] Rec. Doc. 18.

[44] Rec. Doc. 7-1 at 4.

9:2771.[45] While the Complaint states that Lemoine provided Plaintiff with copies of the construction drawings, Defendant points out that Plaintiff has not alleged that Lemoine created the drawings or was at fault for the alleged discrepancies.[46]

Second, Defendant argues that the Complaint states that Lemoine had to ask the project architect for color-coded drawings, which supports the contention that the construction drawings were created by the project architect, not Lemoine.[47] Relying on *Martin v. Boh Bros. Construction Co.*,[48] Defendant contends that Louisiana Revised Statute § 9:2771 relieves Lemoine of the responsibility of having to warrant the sufficiency of plans furnished by others.[49]

Third, even assuming Lemoine was in possession of the color-coded drawings and did not provide them to Plaintiff initially, Defendant argues that it was not Lemoine's responsibility to provide Plaintiff with the drawings pursuant to the subcontract.[50] Defendant asserts that the subcontract placed the obligation on Plaintiff "to purchase or reproduce additional copies of drawings and specifications reasonably necessary for the execution of the work."[51] Defendant avers that Plaintiff stipulated in the subcontract that it "entered into the project work order based on its own examination, investigation and evaluation and not in reliance upon any opinions or representations of [Lemoine]."[52]

---

[45] *Id.*

[46] *Id.* at 5.

[47] *Id.* at 5–6.

[48] 05-1300 (La. App. 4 Cir. 6/7/06), 934 So. 2d 196, 199.

[49] Rec. Doc. 7-1 at 6.

[50] *Id.* at 6.

[51] *Id.* at 7.

[52] *Id.*

Fourth, Defendant argues that Plaintiff has failed to plead facts to support its argument that it is entitled to payment from Lemoine for the cost of the change order.[53] Defendant contends that Plaintiff did not timely notify Lemoine of the alleged discrepancies in the plans as required by Article 25 of the subcontract, and thus, Plaintiff is precluded from claiming any change order amounts.[54] Based on this alleged failure by Plaintiff, Defendant asserts that Plaintiff is responsible for any extra costs incurred pursuant to Article 25 of the subcontract.[55]

Fifth, Defendant argues that Article 6 of the subcontract requires that Plaintiff issue written notice to Lemoine if it intended to file a claim for an adjustment of the subcontract price.[56] Defendant avers that Plaintiff's failure to provide written notice constitutes a waiver of its right to claim any amounts for extra work.[57]

Sixth, Defendant argues that Article 34(d) of the subcontract provides that in the case of a dispute between the contractor and subcontractor, in any way arising from any act or omission of the owner, a third-party, or involving contract documents, Plaintiff is expressly bound by the decisions of the owner for claims for additional sums for its work on the project.[58] Defendant contends that the instant dispute arises from an omission of the project architect, a third party, and involves the construction drawings, which were the contract documents.[59] Defendant avers that the Complaint does not allege that the owner approved of Plaintiff's claim for additional sums for

---

[53] *Id.*

[54] *Id.* at 8.

[55] *Id.* at 9.

[56] *Id.*

[57] *Id.* at 13.

[58] *Id.* at 14.

[59] *Id.*

the incorrect brick order as required by the subcontract.[60]

Seventh, Defendant asserts that Articles 13 and 34(d) provide that if changes to the subcontract and project work order result from actions or inactions of the owner or its architect, or a dispute involves the contract documents, Plaintiff agrees that recovery by Lemoine from the owner is an express and absolute precedent to any payment to Plaintiff.[61] Defendant asserts that the Complaint does not reference said condition.[62]

Eighth, Defendant avers that Article 13 of the subcontract provides that a seven-day notice for a change order is an express and absolute condition precedent to any modification of the project work order price.[63] Defendant contends that the Complaint does not allege that written seven-day notice was provided regarding the brick color discrepancy.[64] Defendant argues that the Court should grant its motion and dismiss Plaintiff's claims.[65]

**B.     *Plaintiff's Arguments in Opposition***

Plaintiff argues that the allegations in the Complaint are sufficient to establish a plausible claim under the Louisiana Public Works Act ("LPWA").[66] Plaintiff contends that, as surety for Lemoine, Defendant guaranteed payment of Lemoine's obligations for work performed on the project, Plaintiff filed a Sworn Statement of Claim and Privilege, noticed all parties, and filed suit

---

[60] *Id.* at 15.

[61] *Id.*

[62] *Id.* at 16.

[63] *Id.*

[64] *Id.*

[65] *Id.* at 19.

[66] Rec. Doc. 16 at 4.

within the time prescribed by the LWPA.[67]

Next, Plaintiff argues that Defendant erroneously seeks to hold Plaintiff to a higher burden than is required by Federal Rule of Civil Procedure 12(b)(6).[68] Plaintiff contends that the issues raised by Defendant present issues for the trier of fact.[69] Plaintiff avers that the complaint contains allegations of a plausible claim under the LWPA.[70]

Third, Plaintiff argues that the Court should treat Defendant's motion as one for summary judgment, deny the motion as premature, or that Plaintiff be provided an opportunity to present evidence.[71]

### C.     Defendant's Arguments in Further Support of the Motion

Defendant argues that the Court can consider the subcontract in deciding the motion without converting the motion to one for summary judgment.[72] Defendant contends that the subcontract was attached to the motion, the subcontract was referenced in the complaint, and the subcontract is central to the claim.[73]

Next, Defendant argues that the complaint must allege sufficient facts to show that the purported amounts are owed pursuant to the subcontract.[74] Defendant contends that Plaintiff has

---

[67] *Id.* at 5.

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.* at 6.

[72] Rec. Doc. 18 at 1.

[73] *Id.* at 2.

[74] *Id.* at 4.

failed to plead sufficient facts that would entitle it to the purported amounts for the change order.[75]

Third, Defendant argues that Plaintiff has failed to make any substantive counter arguments in opposition to the motion.[76] Defendant contends that the complaint contains only conclusory allegations, which does not allow the Court to draw an inference that Plaintiff is entitled to the change order amount pursuant to the subcontract.[77]

Fourth, Defendant argues that Lemoine is statutorily immune from liability for the amounts Plaintiff alleges is owed.[78] Defendant contends that Louisiana Revised Statute § 9:2771 precludes a contractor from liability for defects in any work under construction if the defect was due to any fault or insufficiency of the plans, and the plans were not created by the contractor.[79] Defendant avers that the construction drawings were not created by Lemoine.[80]

Fifth, Defendant argues that Plaintiff failed to comply with Article 25 of the subcontract, which requires the subcontractor to check and notify the contractor of any discrepancies before performing the work.[81] Defendant contends that Plaintiff failed to comply with Articles 6 and 38 of the subcontract, which requires Plaintiff to provide written notice of claim for an increase in subcontract price and certify the claim within seven days.[82] Defendant avers that Article 34(d) of the subcontract indicates that any disputes arising from an act or omission of the owner or third

---

[75] *Id.*

[76] *Id.*

[77] *Id.* at 5.

[78] *Id.* at 6.

[79] *Id.*

[80] *Id.*

[81] *Id.* at 7.

[82] *Id.* at 8.

party shall be bound by the decision of the owner for claims for additional sums on the project.[83]

Defendant asserts that Article 13 of the subcontract provides that if any changes result from the

actions or inactions of the owner or architect, recovery by Lemoine from the owner for such change

is an express and absolute condition precedent to any payment to Plaintiff.[84]

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for

"failure to state a claim upon which relief can be granted."[85] A motion to dismiss for failure to

state a claim is "viewed with disfavor and is rarely granted."[86] "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"[87] "Factual allegations must be enough to raise a right to relief above the

speculative level."[88] A claim is facially plausible when the plaintiff has pleaded facts that allow

the court to "draw the reasonable inference that the defendant is liable for the misconduct

alleged."[89]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant,

and all facts pleaded are taken as true.[90] However, although required to accept all "well-pleaded

---

[83] *Id.* at 8–9.

[84] *Id.* at 9.

[85] Fed. R. Civ. P. 12(b)(6).

[86] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[87] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[88] *Twombly*, 550 U.S. at 555.

[89] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[90] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

facts" as true, a court is not required to accept legal conclusions as true.[91] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[92] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[93] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[94] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[95] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[96] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[97]

## IV. Analysis

As an initial matter, the Court addresses Plaintiff's argument that the instant motion should be converted to one for summary judgment because consideration of the subcontract is required in deciding the motion. District courts primarily consider the allegations in the complaint when deciding a Rule 12(b)(6) motion to dismiss. However, "[d]ocuments that a defendant attaches to a

---

[91] *Iqbal*, 556 U.S. at 678–79.

[92] *Id.* at 679.

[93] *Id.* at 678.

[94] *Id.*

[95] *Id.*

[96] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[97] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim."[98] Defendant has attached the subcontract to its motion, the subcontract is referenced in the complaint, and the subcontract is central to Plaintiff's claims. As such, the subcontract can be considered without converting the motion to one for summary judgment.

## A.   *Louisiana Public Works Act ("LPWA")*

Plaintiff brings this action pursuant to the LPWA. Public construction contracts are governed by the LPWA,[99] which is *sui generis* and provides the exclusive remedies to parties in litigation arising out of public construction work.[100] Discussing the LPWA, in *Pierce Foundations, Inc. v. Jaroy Constr., In*c.,[101] the Louisiana Supreme Court noted that in 1918, the legislature enacted Act 224, the precursor to the modern LPWA, to "protect those performing labor and furnishing materials for public works."[102] The LPWA also protects a public entity complying with the requirements of the statute from expenses caused by the failure of the general contractor to perform the contract.[103]

The LPWA accomplishes its purpose of protecting laborers and suppliers of materials on public works by mandating that when a public entity enters into a contract for the construction, alteration, or repair of a public work in excess of $25,000.00, the contractor is required to post a

---

[98] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

[99] La. Rev. Stat. § 38:2241, *et seq.*,

[100] *State Through Div. of Admin. v. McInnis Bros. Const.,* 97-0742 (La. 10/21/97), 701 So. 2d 937, 944 (internal citation omitted).

[101] 2015-0785 (La. 5/3/16), 190 So. 3d 298, 301.

[102] *Id.*

[103] *Wilkin v. Dev Con Builders, Inc.,* 561 So. 2d 66, 71 (La. 1990).

bond "in a sum of not less than fifty percent of the contract price for the payment by the contractor or subcontractor to claimants as defined in R.S. 38:2242."[104] "The payment bond serves as an additional fund or security to assure that those who perform work on public projects receive payment for their work in the event of a contractor's inability to fulfill its payment obligations. It insures against unpaid claims from parties supplying labor and materials for the construction of public works."[105]

The category of "claimants" who are entitled to recovery under the LPWA includes any person to whom money is due pursuant to a contract with the owner, contractor, or subcontractor for doing work, performing labor, or furnishing material or supplies for the construction of any public work.[106] One method for claimants to assert claims under the LPWA is set forth in Louisiana Revised Statute § 38:2242(B), which provides:

> Any claimant may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.[107]

The claimant must also provide written notice to the contractor by registered or certified mail within the same 45-day period in order to preserve his claim against the surety or contractor.[108] The LPWA also provides a separate remedy for claimants against the contractor and its surety who

---

[104] La. Rev. Stat. § 38:2241(A)(2); *Pierce Foundations, Inc.,* 190 So. 3d at 301.

[105] *Glencoe Educ. Found., Inc. v. Clerk of Court & Recorder of Mortgages for Par. of St. Mary***,** 2010-1872 (La. App. 1 Cir. 5/6/11), 65 So. 3d 225, 231, *writ denied*, 2011-1142 (La. 10/21/11), 73 So. 3d 383.

[106] La. Rev. Stat. § 38:2242(A).

[107] La. Rev. Stat. § 38:2242(B); *Woodrow Wilson Constr., LLC v. Amtek of Louisiana, Inc*., 2017-1156 (La. App. 1 Cir. 8/6/18), 256 So. 3d 305, 311–12.

[108] Dale R. Baringer, James S. Holliday, Jr., H. Bruce Shreves, *La. Prac. Constr. Law* § 13:11, Time limitations (July 2023).

have complied with notice and recordation requirements of Louisiana Revised Statute § 38:2242(B).[109] Louisiana Revised Statute § 38:2247 provides that any claimant under the Act can file a direct action against the contractor and surety, and the suit must be brought within one year after recordation of acceptance of the work or notice of default. Claimants who do not have a contract with the prime contractor must serve their affidavit of claim on the governing authority, record the claim in the mortgage office, and give notice of the claim to the contractor within the 45-day period after recordation of acceptance or notice of default in order to preserve their claim against the contractor and surety.[110]

Here, Plaintiff is a subcontractor who performed work pursuant to a public works contract. Defendant argues that Plaintiff has failed to state a claim under the LPWA because it has failed to allege facts that show the requested amount for the change order is owed pursuant the subcontract. As stated above, the category of "claimants" who are entitled to recovery under the LPWA includes any person to whom money is due pursuant to a contract with the owner, contractor, or subcontractor for doing work, performing labor, or furnishing material or supplies for the construction of any public work.[111]

The Complaint alleges that the amount of $248,741.28 is due pursuant to the subcontract without specific reference to any contractual provision that shows Plaintiff is entitled to said amount.[112] Defendant points out several contractual obligations that have not been fulfilled by Plaintiff and are not referenced in the Complaint, which Defendant argues supports dismissal.

---

[109] *Id.*

[110] Dale R. Baringer, James S. Holliday, Jr., H. Bruce Shreves, *La. Prac. Constr. Law* § 13:16, Direct action against surety (July 2023).

[111] La. Rev. Stat. § 38:2242(A).

[112] See Rec. Doc. 1.

While the Court is required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[113] Plaintiff's bare allegation that the change order amount is due pursuant to the subcontract, without more, is insufficient to state a claim pursuant to the LPWA. Short of granting a motion to dismiss, the Court may grant Plaintiff leave to amend the Complaint.[114] As such, the Court will deny the motion to dismiss and grant Plaintiff leave of Court to amend the Complaint to cure this deficiency, if possible.

**B.     *Applicability of Louisiana Revised Statute § 9:2771***

Defendant argues that Lemoine, as general contractor and principal, is statutorily immune from liability because Plaintiff has not alleged that Lemoine was at fault for the insufficiency of the construction drawings. Louisiana Revised Statue § 9:2771 provides:

> No contractor, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9), shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.

The statute "provides a safe harbor to the contractor so long as plans and specifications are not provided by him."[115] Courts have found that the rationale behind this statute is that "a contractor is not a guarantor of the sufficiency of the plans and specifications which another person

---

[113] *Iqbal*, 556 U.S. at 678–79.

[114] Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave when justice so requires."); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[115] *Caskey v. Merrick Const. Co., Inc.*, 46,886 (La. App. 2 Cir. 3/14/12), 86 So. 3d 186.

draws."[116] A contractor's immunity to third parties for defects in the work constructed, under the article governing nonliability of a contractor for destruction or deterioration of work, results from proof of compliance with plans and specifications alone.[117] "In general, a contractor owes third parties a duty to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations; however, a contractor is not the guarantor of the sufficiency of plans and specifications drawn by another, and if it complies with those plans and specifications, it is entitled to statutory immunity."[118] "Under the contractor immunity statute, a contractor cannot rely blindly on plans and specifications, but rather, to avoid liability, the contractor must prove either that the condition created was not hazardous or that it had no justifiable reason to believe that its adherence to the plans and specifications created a hazardous condition."[119] Tort immunity is an affirmative defense that must be specifically pleaded in an answer and for which the one asserting the defense has the burden of proof.[120]

The issue of whether Lemoine is statutorily immune under Louisiana Revised Statue § 9:2771 is an affirmative defense that must be proven by Defendant.[121] At the Rule 12(b)(6) stage, a factual determination is improper, and Defendant cannot present evidence to meet this burden of proof at this juncture. While Defendant argues that the Complaint indicates that the construction

---

[116] *Cormier v. Honiron Corp.*, 2000-446 (La. App. 3 Cir. 9/27/00); 771 So. 2d 193 (citing *Bernard v. State through DOTD*, 93-1376 (La. App. 3 Cir. 6/1/94), 640 So. 2d 694).

[117] *See id; Banks v. Par. of Jefferson*, 12-215 (La. App. 5 Cir. 1/30/13); 108 So. 3d 1208.

[118] *Banks,* 108 So. 3d at 1218 (citing *Morgan v. Lafourche Recreation Dist. No. 5*, 2001-1191 (La. App. 1 Cir. 6/21/02), 822 So. 2d 716, *writ denied*, 2002-1980 (La. 10/25/02), 827 So. 2d 1156).

[119] *Id.*; *See also Bernard v. State through Dep't of (Highways) Transp. & Dev.*, 93-1376 (La. App. 3 Cir. 6/1/94), 640 So. 2d 694, 700, *writ denied*, 1994-1814 (La. 10/14/94), 643 So. 2d 165.

[120] *Walls v. American Optical Corp.*, 1998-0455 (La. 9/8/99), 740 So. 2d 1262.

[121] *See e.g., Richard v. State through DOTD,* 610 So. 2d 839, 841 (La. App. 1 Cir. 10/16/92); *see also Morgan*, 822 So. 2d at 721–22; *Banks,* 108 So. 3d at 1208.

drawings were prepared by the architect and not Lemoine, the Court must also consider whether Lemoine "caused [the construction drawings] to be made."[122] As such, Defendant's argument cannot be resolved at the Rule 12(b)(6) stage.

### V. Conclusion

For the reasons stated herein, the Court finds that the factual allegations in the Complaint are insufficient to show that the requested change order amount is due pursuant to the subcontract. Nevertheless, the Court will allow Plaintiff leave of Court to amend its Complaint to cure the deficiencies notes herein, if possible. Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss[123] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave of Court to amend the Complaint within fourteen days of this Order to cure the deficiencies noted, if possible. If Plaintiff fails to amend the Complaint, or if Plaintiff amends the Complaint and the amendments do not cure the deficiencies identified in this Order, Defendant is granted leave to file responsive motions if necessary.

**NEW ORLEANS, LOUISIANA**, this __3rd__ day of July, 2024.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[122] *See A&M Pest Control Service, Inc. v. Fejta Const. Co., Inc.*, 338 So. 2d 946, 951 (La. App. 4 Cir. 10/13/1976).

[123] Rec. Doc. 7.