UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SMALL CONSTRUCTION GROUP, LLC | CIVIL ACTION |
| VERSUS | NO. 23-6866 |
| BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY | SECTION: "G"(1) |

## ORDER AND REASONS

Before the Court is Defendant Berkshire Hathaway Specialty Insurance Company's ("Defendant") Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6).[1] This case involves a public works contract with the State of Louisiana through the Department of Education to construct a high school in New Orleans.[2] Lemoine Company, LLC ("Lemoine") was general contractor for the project, and Plaintiff Small Construction Group, LLC ("Plaintiff") performed masonry work related to the project.[3] Defendant issued a statutory payment and performance bond for the project with Lemoine as principal and Defendant as surety.[4] Plaintiff brings this action against Defendant pursuant to the Louisiana Public Works Act ("LPWA"), alleging that the construction project was compromised due to discrepancies in the construction drawings, and Plaintiff is entitled to costs for a change order.[5]

---

[1] Rec. Doc. 29.

[2] Rec. Doc. 1.

[3] *Id.*

[4] *Id.*

[5] *Id.*

1

The Court previously denied Defendant's Motion to Dismiss the original complaint, and granted Plaintiff leave of Court to file an amended complaint.[6] Defendant now seeks to dismiss Plaintiff's Amended Complaint, arguing that the Amended Complaint fails to allege facts that entitle Plaintiff to relief because Plaintiff has not shown that it is entitled to costs for the change order pursuant to the terms of the subcontract.[7]

For the reasons stated herein, the Court finds that the allegations in the Amended Complaint are sufficient to state a claim that Plaintiff is entitled to relief pursuant to the Louisiana Public Works Act. Accordingly, considering the motion, the opposition, the reply memorandum, the record, and the applicable law, the Court denies the motion.

## I. Background

On November 15, 2023, Plaintiff filed a complaint in this Court against Defendant pursuant to the LPWA.[8] On February 22, 2024, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[9] On July 3, 2024, the Court denied the motion.[10] The Court found that (1) a determination of whether Defendant was statutorily immune from liability is a question of fact that could not be resolved on a Rule 12(b)(6) motion; and (2) Plaintiff's bare allegations that the change order amount is due pursuant to the subcontract, without more, is insufficient to state a claim pursuant to the LPWA.[11] The Court granted Plaintiff leave of Court to

---

[6] Rec. Doc. 23.

[7] Rec. Doc. 29.

[8] Rec. Doc. 1.

[9] Rec. Doc. 7.

[10] Rec. Doc. 23.

[11] *Id.*

amend the complaint to address these deficiencies, if possible.[12] On July 17, 2024, Plaintiff filed an Amended Complaint.[13]

The Amended Complaint provides that on August 21, 2019, Lemoine, as general contractor, entered into a public works contract with the State of Louisiana through the Department of Education to construct the New Cohen High School located at 3520 Dryades Street, New Orleans, Louisiana 70115 ("the Project").[14] On September 19, 2019, a copy of the contract was recorded with the Recorder of Mortgage for Orleans Parish, State of Louisiana.[15] Defendant issued a statutory Payment and Performance Bond for the project with Lemoine as principal and Defendant as surety.[16]

On August 13, 2020, Plaintiff submitted a bid proposal to Lemoine to perform masonry work.[17] The Amended Complaint alleges that Plaintiff bid the project in accordance with Lemoine's written bidding documents, which included a set of black and white construction drawings dated June 5, 2020.[18] The Amended Complaint states that Plaintiff relied on said construction drawings to calculate the number of red and tan bricks needed to complete the masonry work.[19]

On April 7, 2021, Lemoine entered into a Master Subcontract Agreement ("the

---

[12] *Id.*

[13] Rec. Doc. 25.

[14] Rec. Doc. 25 at 2.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

Subcontract") with Plaintiff to perform the masonry work for the project.[20] The price for the subcontract was $1,079,997.00.[21] The subcontract required Plaintiff to complete the work in accordance with the construction drawings, which were identified by name and number in exhibit B of the subcontract.[22] Upon Lemoine's acceptance of the subcontract, Plaintiff was provided electronic access to updated construction drawings dated March 15, 2021.[23] The Amended Complaint states that the March 15, 2021 construction drawings were substantively identical to the June 5, 2020 drawings and did not change the brick quantity and color calculation.[24] The Amended Complaint states that neither of the construction drawings were color-coded.[25]

The Amended Complaint states that after the execution of the subcontract, Plaintiff informed Lemoine that the time for delivery of the bricks to the construction site would be at least sixteen weeks.[26] At Lemoine's request, Plaintiff agreed to work expeditiously to ensure the bricks were ordered so that work could commence by Thanksgiving.[27] On June 30, 2021, after conferring and obtaining approval from Lemoine, Plaintiff ordered the brick color and quantity for the project.[28] The Amended Complaint states that Plaintiff determined the quantity and color based on the construction drawings provided by Lemoine and by means and methods consistent with the

---

[20] *Id.* at 3.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 4.

general standards of the industry.[29]

The bricks were delivered to the construction site in late October 2021.[30] The Complaint states that Lemoine was not prepared for Plaintiff to begin the project by Thanksgiving, and Plaintiff was forced to store the materials on the site for approximately one month.[31]

In January 2022, Plaintiff's on-site supervisor asked Lemoine if color-coded construction drawings existed for the project.[32] On January 14, 2022, Lemoine emailed Plaintiff a color-coded copy of the March 15, 2021 construction drawings from the project architect.[33] The Amended Complaint alleges that a hard copy of the color-coded construction drawings was stored on-site by Lemoine, but it was not provided to Plaintiff.[34] The Amended Complaint alleges that the color-coded construction drawings included red and tan coloring on the bricks but otherwise appeared to be the same as the black and white version.[35]

The Amended Complaint states that as the project progressed, Plaintiff noticed a significant discrepancy between the color-coded drawings and the black and white drawings.[36] The Amended Complaint alleges that the shading on the color-coded drawings did not match the labels for the brick colors and locations on the black and white drawings.[37] For example, the Amended

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* at 5.

[37] *Id.*

Complaint states that the A-201 West Elevation is labeled with "brick veneer (tan) only" on the black and white drawings, while the color-coded drawings show a pattern of tan and red bricks.[38] Based on this discrepancy, there was a brick surplus of one color and a shortage of another color, resulting in an overall miscalculation of 78,570 bricks.[39]

The Amended Complaint states that Plaintiff promptly notified Lemoine of the discrepancy, and the parties worked together to devise a new plan for procuring the correct quantity and color of bricks.[40] On or about June 3, 2022, Lemoine and the project architect approved and expressly directed Plaintiff to order new bricks and perform the extra work on the project.[41] The Amended Complaint alleges that Lemoine and the project architect expressly agreed to pay Plaintiff an increase in the subcontract price for the extra work.[42]

Plaintiff completed the entire scope of the work by December 2022.[43] Plaintiff states that pay applications and written change orders were submitted pursuant to Articles 12 and 13 of the subcontract.[44] The Amended Complaint states that Plaintiff is entitled to all outstanding sums for its work on the project under Articles 12 and 13 of the subcontract.[45]

Plaintiff alleges that Lemoine's communications directing Plaintiff to perform the additional work effectively modified the original terms of the subcontract and triggered the change

---

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* at 5–6.

[42] *Id.* at 6.

[43] *Id.*

[44] *Id.*

[45] *Id.*

order provision in Article 12 and the extra work provision in Article 13.[46] Plaintiff contends that Lemoine agreed both expressly and tacitly, by its physical presence on the site, to the extra work performed by Plaintiff.[47] The Amended Complaint states that despite multiple demands, Lemoine has failed to pay Plaintiff's change order, which represents the current amount due pursuant to the subcontract.[48] The Amended Complaint states that the outstanding amount due is $248,741.28.[49]

On December 29, 2022, Plaintiff filed a Sworn Statement of Claim and Privilege with the Recorder of Mortgage for Orleans Parish for the unpaid balance pursuant to the Louisiana Public Works Act.[50] On the same date, Plaintiff notified Defendant, Lemoine, and the State of Louisiana through the Department of Education – Recovery School District of its Sworn Statement of Claim and Privilege via certified mail.[51] To date, Plaintiff has not been paid in connection with its Sworn Statement of Claim and Privilege.[52]

On August 7, 2024, Defendant filed the instant Motion to Dismiss the Amended Complaint.[53] On September 10, 2024, Plaintiff filed an opposition to the motion.[54] On September 16, 2024, Defendant filed a reply memorandum in further support of the motion.[55]

---

[46] *Id.* at 8.

[47] *Id.*

[48] *Id.* at 9.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.* at 10.

[53] Rec. Doc. 29.

[54] Rec. Doc. 31.

[55] Rec. Doc. 32.

## II. Parties' Arguments

### A.     *Defendant's Argument in Support of the Motion*

Defendant argues that the allegations in the Amended Complaint are similar to those in the original Complaint.[56] Defendant contends that the allegations contained in the Amended Complaint reveal that Plaintiff is only seeking amounts for the change order due to the alleged discrepancies in the project's drawings.[57] Defendant avers that for Plaintiff to be considered a "claimant" under the LPWA, Plaintiff must allege sufficient facts to show that it is entitled to an amount pursuant to its subcontract with Lemoine.[58]

Defendant argues that Plaintiff is not due any amounts for a change order or extra work because Plaintiff failed to comply with Article 25 of the subcontract.[59] Defendant explains that Article 25 requires that a subcontractor check all contract documents and notify the contractor of any discrepancies before performing the work, and that the subcontractor shall be responsible for any extra costs resulting from a failure to do so.[60] Defendant contends that the Amended Complaint shows that Plaintiff waited seven months after its initial brick order, and after work on the project began, to seek clarification on construction drawings in violation of Article 25.[61]

Defendant also argues that Plaintiff is not due any amounts for a change order or extra work because Plaintiff failed to comply with Articles 6 and 38 of the subcontract.[62] Defendant

---

[56] Rec. Doc. 29-1 at 3.

[57] *Id.* at 6.

[58] *Id.* at 7.

[59] *Id.* at 8.

[60] *Id.*

[61] *Id.* at 9.

[62] *Id.*

explains that Article 6 requires Plaintiff to provide written notice of claim within seven days of any directive from Lemoine which Plaintiff believes entitles it an adjustment in the subcontract price.[63] Defendant states that Article 38 requires that said written notice of claim for an adjustment in the subcontract price be certified and signed by a senior company official.[64] Defendant points out that Plaintiff does not allege that it provided Lemoine with any written notice of claim within seven days of a directive from Lemoine.[65] Defendant points out that the Amended Complaint contains conclusory allegations that on June 3, 2022, Lemoine and the project architect approved and expressly directed Plaintiff to order new bricks and perform addition work, but this does not comply with Articles 6 and 38 of the subcontract.[66] Defendant contends that the Amended Complaint states that Plaintiff submitted written change orders only after completing the contracted work in December 2022.[67] Defendant argues that other courts have dismissed claims by a subcontractor under the LPWA for similar failures.[68]

Defendant argues that Plaintiff is not owed for any change order amounts because Plaintiff failed to comply with Article 13, paragraph 4 of the subcontract.[69] Defendant explains that Article 13, paragraph 4 contains an absolute condition precedent which requires that Plaintiff provide written notice of a change to the work order.[70] Defendant contends that the allegations in the

---

[63] *Id.* at 9 – 10.

[64] *Id.* at 10.

[65] *Id.*

[66] *Id.*

[67] *Id.* at 11.

[68] *Id.* at 11 – 12.

[69] *Id.* at 14.

[70] *Id.*

Amended Complaint indicate that Plaintiff failed to comply with Article 13.[71] Defendant argues that other courts have dismissed a plaintiff's claim where he didn't perform a condition precedent.[72]

Defendant argues that Plaintiff is not owed for any change order amounts because the conditions precedent set out in Articles 13 and 34(d) have not occurred.[73] Defendant explains that Articles 13 and 34(d) require that Berkshire's liability shall be limited to only sums recovered by Lemoine from the owner.[74] Defendant contends that the Amended Complaint fails to allege that Lemoine recovered any sums from the owner, which is an absolute condition precedent to Plaintiff's claim.[75]

Defendant argues that Plaintiff waived its claim pursuant to Article 33 of the subcontract.[76] Defendant contends that the allegations in the Amended Complaint reveal that Plaintiff failed to comply with Article 33.[77] Defendant explains that Article 33 states that any default of Lemoine is waived unless Plaintiff gives Lemoine written notice within seven days after the occurrence of said default.[78] Defendant avers that because the Amended Complaint fails to address any written notice of default, Plaintiff has failed to state a claim under the LPWA.[79]

---

[71] *Id.*

[72] *Id.* at 15.

[73] *Id.* at 15 – 16.

[74] *Id.* at 16.

[75] *Id.*

[76] *Id.* at 17.

[77] *Id.*

[78] *Id.*

[79] *Id.*

Defendant contends that all change orders were required to be in writing pursuant to the subcontract and the LPWA.[80] Defendant avers that the Amended Complaint does not provide that Plaintiff complied with this requirement.[81] Defendant asserts that the LPWA requires that all change orders be in writing or in an electronic format and signed by the contractor, public entity, or design representative.[82] Defendant states that the Amended Complaint does not allege that a signed change order was executed by Lemoine, and the Amended Complaint should be dismissed.[83]

While the Amended Complaint states that an employee of Lemoine, Barry Jones ("Mr. Jones"), sent instructions to Plaintiff to proceed with ordering the bricks, Defendant avers that the subcontract requires that change orders be signed by Lemoine's vice president.[84] Defendant contends that Plaintiff agreed and had knowledge that Barry Jones had no authority to approve the underlying change order.[85]

Defendant argues that the Amended Complaint fails to allege facts that support a modification of the contract based on the parties' conduct.[86] Defendant contends that Plaintiff failed to comply with numerous provisions of the subcontract and has failed to state a claim for relief under the LPWA.[87]

---

[80] *Id.* at 18.

[81] *Id.*

[82] *Id.*

[83] *Id.* at 19.

[84] *Id.*

[85] *Id.* at 21 – 22.

[86] *Id.*

[87] *Id.* at 23.

Defendant contends that the subcontract contains various "pay-if-paid" provisions.[88] Defendant asserts that the Amended Complaint does not allege that Lemoine received payment from the owner for the change order amounts.[89] Defendant avers that the Amended Complaint should be dismissed.[90]

### B.    *Plaintiff's Arguments in Opposition*

In opposition, Plaintiff argues that the cases cited in Defendant's motion are inapplicable here, and the contractual defenses raised by Defendant require proof.[91] Plaintiff contends that the arguments raised by Defendant are not appropriate grounds for dismissal under Federal Rule of Civil Procedure 12(b)(6).[92] Plaintiff avers that Federal Rule of Civil Procedure 12(g) prohibits the instant motion as it is largely duplicative and causes unnecessary delay at the pleading stage.[93]

Plaintiff contends that the Amended Complaint specified its claims by incorporating the change order and extra work provisions in the subcontract and specifically alleging modification of the subcontract through the written authorization of Barry Jones.[94]

Plaintiff avers that the Amended Complaint meets the plausibility standard.[95] Plaintiff contends that federal courts in Louisiana have denied similar motions to dismiss involving the

---

[88] *Id.* at 24.

[89] *Id.* at 25.

[90] *Id.*

[91] Rec. Doc. 31 at 1.

[92] *Id.*

[93] *Id.*

[94] *Id.* at 3.

[95] *Id.* at 4.

LPWA.[96] Plaintiff argues that it has stated a plausible claim under the LPWA, and the law does not require a likelihood that Plaintiff will prevail.[97]

Plaintiff avers that in the cases cited by Defendant in support of its arguments, the courts required a showing of proof either following a trial on the merits or at the summary judgment phase.[98] Plaintiff asserts that the cases cited by Defendant support denial at this stage.[99]

Plaintiff argues that Louisiana law allows it to recover even if the contract requires that all change orders be in writing.[100] Plaintiff contends that the Louisiana Fifth Circuit Court of Appeal has found that verbal requests for a change order by a homeowner modified the contract in similar circumstances following a trial on the merits.[101] Plaintiff asserts that despite the provisions of the subcontract, Louisiana law provides Plaintiff a right of recovery if Lemoine authorized the extra work verbally, by actions, or inactions.[102] Plaintiff avers that the Amended Complaint alleges that Lemoine's project manager and architect approved the extra work, specifies the contractual provisions at issue, and details the alleged modification of said provisions.[103]

Finally, Plaintiff argues that Federal Rule of Civil Procedure 12(g) prohibits the instant motion to dismiss.[104] Plaintiff contends that other courts in this District have denied successive

---

[96] *Id.* at 5.

[97] *Id.* at 6.

[98] *Id.* at 6–7.

[99] *Id.* at 8.

[100] *Id.*

[101] *Id.* at 9.

[102] *Id.* at 10.

[103] *Id.*

[104] *Id.*

motions to dismiss pursuant to Rule 12(b)(6).[105] Plaintiff avers that the defenses raised in Defendant's motion were available to Defendant or raised in a similar manner in Defendant's first motion to dismiss.[106] Plaintiff avers that Defendant's motion should be denied.[107]

## C. *Defendant's Arguments in Further Support of the Motion*

Defendant repeats its argument that Plaintiff failed to plead that all conditions precedent under the subcontract were satisfied.[108] While Plaintiff argues that Defendant failed to provide jurisprudence to support its contention, Defendant contends that Plaintiff failed to address other jurisprudential and statutory authority cited by Defendant.[109] Defendant contends that Plaintiff failed to comply with Federal Rule of Civil Procedure 9(c), which requires that a party must at least allege generally that all conditions precedent have occurred or have been performed.[110] Defendant avers that Plaintiff cannot be considered a "claimant" under the LPWA.[111] Defendant argues that based on the allegations contained in the Amended Complaint, Plaintiff concedes that it failed to comply with the provisions of the subcontract.[112]

Defendant rejects Plaintiff's argument that Plaintiff is not required to show a likelihood of success on the merits.[113] Defendant contends that Plaintiff cannot assert a claim under a theory of

---

[105] *Id.* at 11.

[106] *Id.* at 12.

[107] *Id.*

[108] Rec. Doc. 32 at 2.

[109] *Id.*

[110] *Id.* at 3.

[111] *Id.*

[112] *Id.* at 4.

[113] *Id.* at 5.

breach of contract or detrimental reliance as the LPWA is the exclusive remedy in public construction work.[114]

Defendant contends that Plaintiff has failed to address many arguments raised by Defendant.[115] Defendant asserts that the provisions of the subcontract relied on by Defendant do not require proof through discovery because Plaintiff's failure to comply with the subcontract is admitted through Plaintiff's own allegations.[116] Defendant avers that this Court has relied on "hyper technical" provisions in an insurance contract in granting a Rule 12(b)(6) motion to dismiss.[117]

While the Amended Complaint alleges that the subcontract was modified based on the communications of Lemoine's employee, Barry Jones, Defendant argues that this is no way modifies the clear and explicit terms of the subcontract.[118]

While Plaintiff argues that the instant motion is improper, Defendant contends that this Court granted Defendant leave of Court to file responsive pleadings if Plaintiff failed to cure the deficiencies in its original complaint.[119] Defendant asserts that the Fifth Circuit has held that a defendant may file a new responsive pleading because the amended complaint "typically causes the original pleading to be of 'no legal effect.'"[120] Defendant reargues that the Amended Complaint

---

[114] *Id.*

[115] *Id.*

[116] *Id.* at 6.

[117] *Id.*

[118] *Id.* at 8.

[119] *Id.* at 9.

[120] *Id.* citing *King v. Dogan,* 31 F.3d 344, 346 (5th Cir. 1994).

15

fails to state a plausible claim for relief.[121]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[122] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[123] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[124] "Factual allegations must be enough to raise a right to relief above the speculative level."[125] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[126]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[127] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[128] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[129]

---

[121] *Id.* at 10.

[122] Fed. R. Civ. P. 12(b)(6).

[123] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[124] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[125] *Twombly*, 550 U.S. at 555.

[126] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[127] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[128] *Iqbal*, 556 U.S. at 678–79.

[129] *Id.* at 679.

fails to state a plausible claim for relief.[121]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[122] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[123] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[124] "Factual allegations must be enough to raise a right to relief above the speculative level."[125] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[126]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[127] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[128] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[129]

---

[121] *Id.* at 10.

[122] Fed. R. Civ. P. 12(b)(6).

[123] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[124] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[125] *Twombly*, 550 U.S. at 555.

[126] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[127] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[128] *Iqbal*, 556 U.S. at 678–79.

[129] *Id.* at 679.

Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[130] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[131] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[132] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[133] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[134]

## IV. Analysis

As an initial matter, the Court may consider the subcontract in analyzing Defendant's Rule 12(b)(6) Motion to Dismiss because Defendant has attached the subcontract to its motion, the subcontract is referenced in the complaint, and the subcontract is central to Plaintiff's claims. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim."[135] As such, the subcontract can be considered without converting the motion to one for summary judgment. Further, while Plaintiff argues that Defendant's motion is successive, the Court's prior order

---

[130] *Id.* at 678.

[131] *Id.*

[132] *Id.*

[133] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[134] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[135] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

granted Defendant leave of Court to file another motion to dismiss if the deficiencies noted in the original complaint were not cured.[136] As such, the Court rejects Plaintiff's argument.

Plaintiff brings this action pursuant to the LPWA. Public construction contracts are governed by the LPWA,[137] which is *sui generis* and provides the exclusive remedies to parties in litigation arising out of public construction work.[138] Discussing the LPWA, in *Pierce Foundations, Inc. v. Jaroy Constr., In*c.,[139] the Louisiana Supreme Court noted that in 1918, the legislature enacted Act 224, the precursor to the modern LPWA, to "protect those performing labor and furnishing materials for public works."[140] The LPWA also protects a public entity complying with the requirements of the statute from expenses caused by the failure of the general contractor to perform the contract.[141]

The category of "claimants" who are entitled to recovery under the LPWA includes any person to whom money is due pursuant to a contract with the owner, contractor, or subcontractor for doing work, performing labor, or furnishing material or supplies for the construction of any public work.[142] Defendant argues that Plaintiff is not a "claimant" under the LPWA because, based on Plaintiff's failure to comply with certain conditions precedent set out in the subcontract, money is not due to Plaintiff for change orders pursuant to the subcontract. For this reason, Defendant

---

[136] Rec. Doc. 23.

[137] La. Rev. Stat. § 38:2241, *et seq.*,

[138] *State Through Div. of Admin. v. McInnis Bros. Const.,* 97-0742 (La. 10/21/97), 701 So. 2d 937, 944 (internal citation omitted).

[139] 2015-0785 (La. 5/3/16), 190 So. 3d 298, 301.

[140] *Id.*

[141] *Wilkin v. Dev Con Builders, Inc.,* 561 So. 2d 66, 71 (La. 1990).

[142] La. Rev. Stat. § 38:2242(A).

contends that Plaintiff has failed to state a plausible claim for relief.

However, a determination of whether money is due pursuant to a public works contract is improper at the current Rule 12(b)(6) phase. Defendant has failed to identify any authority that supports the dismissal of a claim under the LPWA at the pleading stage based upon a similar argument. A determination of whether money is due to a claimant under the LPWA requires a presentation of evidence.[143]

A review of the Amended Complaint shows that Plaintiff has stated a plausible claim for relief under the LPWA. The Amended Complaint states that Lemoine and the Project Architect expressly directed Plaintiff to order new bricks and perform extra work,[144] that Lemoine expressly agreed to pay Plaintiff for the extra work,[145] that Plaintiff submitted written change orders for the unpaid amounts pursuant to Articles 12 and 13 of the subcontract,[146] and that Lemoine's actions and express communications effectively modified the subcontract pursuant to Louisiana law.[147] Louisiana law provides that written contracts may be modified by oral contracts or by the conduct of the parties, even when the written contract contains the provision that it must be modified in writing.[148] Modification of a written agreement can be presumed by silence, inaction, or

---

[143] *See St. Tammany Par. Sch. Bd. v. Hartford Cas. Ins. Co.,* 2017-1254 (La. App. 1 Cir. 8/20/18); holding that claimant was not owed money for delay damages pursuant to the provisions of the subcontract following a five-day trial on the merits.

[144] Rec. Doc. 25 at 5 – 6.

[145] *Id.* at 6.

[146] *Id.*

[147] *Id.* at 8 – 9.

[148] *Cajun Constructors, Inc. v. Fleming Const. Co., Inc.,* 2005–2003, p. 8 (La.App. 1 Cir. 11/15/06), 951 So.2d 208, 214; *Newman Marchive Partnership, Inc. v. City of Shreveport,* 41,460, pp. 10–11 (La.App. 2 Cir. 11/1/06), 944 So.2d 703, 710.

implication.[149] While Defendant argues that Plaintiff's allegations that the subcontract was modified have no merit, resolution of this issue requires a factual determination.

As stated above, from the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[150] Further, it is inconsistent with the legislative intent of the LPWA, to "protect those performing labor and furnishing materials for public works,"[151] to dismiss Plaintiff's claims at this stage without allowing time for discovery on whether the contract was modified. As such, the Court denies Defendant's motion.

### V. Conclusion

For the reasons stated herein, the Court finds that the Amended Complaint states a claim for relief under the LPWA. Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6)[152] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this  2nd  day of December, 2024.

*NANNETTE JOLIVETTE BROWN*
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[149] *Cajun Constructors,* 2005–2003 at p. 8, 951 So.2d at 214; *Aqua Pool Renovations, Inc. v. Paradise Manor Community Club, Inc.,* 2004–0119, p. 5 (La.App. 5 Cir. 7/27/04), 880 So.2d 875, 880.

[150] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[151] *Pierce Foundations,* 2015-0785 (La. 5/3/16), 190 So. 3d at 301.

[152] Rec. Doc. 29.